FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
2026 MAY -8 PM 3:19
MARGARET BOTKINS, CLERK
CHEYENNE

# UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

**UNITED STATES OF AMERICA,**

Plaintiff,

**v.**

**JARED ALLEN TORSTVEIT,**

Defendant.

**CRIMINAL COMPLAINT**
**Filed Under Seal**

**Case Number:** 26MJ-22-KHR

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

**COUNT ONE**

Between on or about August 1, 2025, through and including, on or about January 16, 2026, in the District of Wyoming, the Defendant, **JARED ALLEN TORSTVEIT**, with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, Victim #1, used the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that placed Victim #1 in reasonable fear of death of or serious bodily injury to Victim #1, an immediate family member of Victim #1, a spouse or intimate partner of Victim #1, or the pet, service animal, emotional support animal, or horse of Victim #1.

In violation of 18 U.S.C. §§ 2261A(2)(A) and 2261.

**COUNT TWO**

Between on or about August 1, 2025, through and including, on or about January 16, 2026, in the District of Wyoming, the Defendant, **JARED ALLEN TORSTVEIT**, with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, Victim #1, used the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress to that Victim #1, an immediate family member of Victim #1, or a spouse or intimate partner of Victim #1.

In violation of 18 U.S.C. §§ 2261A(2)(B) and 2261.

## COUNT THREE

Between on or about August 18, 2025, through and including, on or about February 2, 2026, in the District of Wyoming, the Defendant, **JARED ALLEN TORSTVEIT**, with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, Victim #2, used the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that placed Victim #2 in reasonable fear of death of or serious bodily injury to Victim #2, an immediate family member of Victim #2, a spouse or intimate partner of Victim #2, or the pet, service animal, emotional support animal, or horse of Victim #2.

In violation of 18 U.S.C. §§ 2261A(2)(A) and 2261.

## COUNT FOUR

Between on or about August 18, 2025, through and including, on or about February 2, 2026, in the District of Wyoming, the Defendant, **JARED ALLEN TORSTVEIT**, with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, Victim #2, used the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress to that Victim #2, an immediate family member of Victim #2, or a spouse or intimate partner of Victim #2.

In violation of 18 U.S.C. §§ 2261A(2)(B) and 2261.

## COUNT FIVE

Between on or about January 26, 2026, through and including, on or about January 30, 2026, in the District of Wyoming, the Defendant, **JARED ALLEN TORSTVEIT**, with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, Victim #3, used the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress to that Victim #3, an immediate family member of Victim #3, or a spouse or intimate partner of Victim #3.

In violation of 18 U.S.C. §§ 2261A(2)(B) and 2261.

I further state that I am a Postal Inspector with the U.S. Postal Inspection Service and that this complaint is based on the following facts:

***(See attached Sworn Statement)***

Continued on the attached sheet and made a part hereof.

Signature of Complainant
R.J. FERGON

Sworn and attested by the applicant before me by telephone, bearing a previous signature submitted by email communication in accordance with the requirements of Fed. R. Crim. P. 4.1.

May 8, 2026 at 3:02 p.m. at Cheyenne, Wyoming
Date | City and State

HON. SCOTT P. KLOSTERMAN
United States Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

UNITED STATES DISTRICT COURT
DISTRICT OF WYOMING

**SWORN STATEMENT OF U.S. POSTAL INSPECTOR RICHARD FERGON IN SUPPORT OF CRIMINAL COMPLAINT UNITED STATES V. JARED ALLEN TORSTVEIT**

I, Richard Fergon, after being duly sworn, hereby depose and state as follows:

1. I am a United States Postal Inspector and have been so employed since May 2019, during which time I underwent a 14-week Basic Postal Inspector Training Academy at the United States Postal Inspection Service Career Development Unit located in Potomac, MD. Upon completion of the 14-week Basic Postal Inspector Training Academy, I was assigned to the United States Postal Inspection Service (USPIS) Denver Division, specifically to the Contraband Interdiction and Investigations (CI2) team in Denver, Colorado, which is responsible for investigating narcotics violations involving the United States mail. My responsibilities include the detection and prevention of the transportation of narcotics/controlled substances through the United States mail, to include, conducting narcotics investigations and executing arrests of individuals for violations of Title 21, United States Code, Sections 841(a)(1) (Possession with Intent to Distribute a Controlled Substance), 843(b) (Use of a Communication Facility to Facilitate the Commission of a Federal Drug Felony) and 846 (Conspiracy to Distribute a Controlled Substance). In August 2021, I was re-assigned to the USPIS Cheyenne Domicile where my responsibilities continued to include the detection and prevention of the transportation of narcotics/controlled substances through the United States mail. Part of my training as a Postal Inspector included narcotics trafficking investigative techniques related to the identification and detection of controlled substances being transported in the United States mail.

2. Prior to my employment with USPIS, I was employed as a Criminal Investigator for the Colorado Attorney General's Office. I was assigned as a Task Force Officer (TFO) in the Drug Enforcement Administration's (DEA) Tactical Diversion Squad (TDS). I was a sworn peace

officer between 2005 and 2019, and first became a sworn peace officer in the State of Texas in 2005 and then the State of Colorado in 2012.

3. I have received specialized training in the investigations of illegal narcotics. I have investigated numerous felony and misdemeanor criminal cases. I have participated in investigations of individuals and organizations for violations of federal and state narcotics laws, conducted and participated in surveillance, the introduction of confidential informants, and have participated in investigations that included the interception of wire and electronic communications. I have executed search and seizure warrants where assets, documents, records, and controlled substances have been located and seized. I also have had experience in debriefing defendants, participant witnesses, informants, and other persons who have personal knowledge of the distribution of controlled substances.

4. Based on this training and experience, I am familiar with current drug trends, including smuggling, packaging, concealment techniques, common drug language, conspiracy techniques, including the use of cellular and digital communications devices, common weights and measurements, and drug identification.

5. The information contained within this affidavit is based on my personal observations, training and experience, as well as information relayed to me by other law enforcement officers involved in this investigation. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause for the requested warrant.

6. Based on the facts in this affidavit, I submit probable cause exists to believe that Jared Allen TORSTVEIT committed violations of 18 U.S.C. §§ 2261A and 2261.

**PROBABLE CAUSE**

7. On March 15, 2025, VICTIM #1 was on duty as a police officer with the Evanston Police Department. VICTIM #1 was dispatched to a call that resulted in the arrest of Jared Allen Torstveit (TORSTVEIT) for driving under the influence and interference with police. I reviewed VICTIM #1's report and it described a contentious encounter where TORSTVEIT was verbally combative and uncooperative.

8. In August of 2025, VICTIM #1 received an anonymous letter sent to their personal residential address located within the District of Wyoming. This letter was typed and written in the style of a news article. It was dated in the future, October 1, 2025, and detailed the attempted assassination by a gun shot of VICTIM #1. The attempted assassination occurred outside of VICTIM #1's residence and described VICTIM #1 as being shot with a "high-powered rifle" with VICTIM #1's neck being targeted. The letter also described the layout of VICTIM #1's residence and the location of where the shooter shot from.

9. On or about September 2, 2025, VICTIM #1 received a second anonymous letter sent to their personal residential address. This letter was typed and was written in the same style as the first letter. The letter had the headline, "DING-DONG THE BITCH IS DEAD!!" The letter was a follow-up "news article" and stated that VICTIM #1 had died due to his/her injuries sustained by an assassination attempt. The letter also stated that VICTIM #1's "brain has been removed from the body, and is undergoing study by the University of Utah anthropology department to determine what species [VICTIM #1] actually was."

10. On or about September 18, 2025, VICTIM #1 received a third anonymous letter sent to their personal residential address. This letter stated, "Hey, Vaginaface, Do you have any idea of how bad your maggot infested corpse is going to smell when they finally pull it out of the ditch? Your existence on Earth is very rapidly coming to an end. Santana is your new lord."

11. On or about January 16, 2026, VICTIM #1 received a parcel, delivered to his personal residential address. This parcel was sent from Rozet, Wyoming and when opened was found to contain packing peanuts and feces.

12. On or about August 18, 2025, an anonymous letter was received by VICTIM #2 at their personal P.O. Box in Evanston, Wyoming. VICTIM #2 is employed as a judge in the State of Wyoming. The letter stated, "Senem Quem Fallit Ille Vir Parvus Magnus Abi Stana." I conducted internet searches which loosely translated this phrase to, "The old man whom tricks/deceives that man small/big go away."

13. On or about September 3, 2025, a second letter was delivered to VICTIM #2's personal P.O. box. The letter stated, "EUREKA!! I HAVE FOUND THE LAST KNOWN LOCATION OF THE SOON-TO-BE-DECEASED [VICTIM #2)]" The letter also contained an aerial photograph of VICTIM #2's residence.

14. On or about February 2, 2026, VICTIM #2 received a parcel, delivered to their personal P.O. Box. This parcel was sent from Rozet, Wyoming and appeared to be identical to the parcel sent to VICTIM #1. This parcel has not yet been opened and is stored in the evidence room of the Uinta County Sheriff's Office.

15. On or about January 30, 2026, VICTIM #3 received a parcel, delivered to their personal residence in Evanston, Wyoming which had been mailed from Rozet, Wyoming on January 26, 2026. VICTIM #3 is employed as an attorney with the Unita County and Prosecuting Attorney's Office in Wyoming. VICTIM #3 opened the parcel and it contained packing peanuts and feces.

16. On October 17, 2025, the Uinta County Sheriff's Office received a call for service at the Uinta County Attorney's Office in reference to an irate male. When deputies arrived TORSTVEIT was visibly upset and wanted to speak to VICTIM #3. TORSTVEIT complained that VICTIM

#3 had "ruined his life" and then wanted to discuss his driving under the influence criminal case. TORSTVEIT was advised that he needed to speak to his attorney and left without further incident.

17. After this incident, investigators determined that VICTIM #1, VICTIM #2 and VICTIM #3 were all involved in TORSTVEIT's driving under the influence criminal case from March 15, 2025.

18. On February 18, 2026, I made contact with TORSTVEIT at the Upton Police Department in Upton, Wyoming. I conducted a non-custodial interview that was recorded with audio and video. In this interview, TORSTVEIT admitted to mailing the feces and letters to VICTIM #1, VICTIM #2 and VICTIM #3. TORSTVEIT stated that he sent the letters and feces because he was upset about losing his commercial driver's license when he was arrested for driving under the influence.

19. On March 10, 2026, I interviewed VICTIM #1. VICTIM #1 stated that he/she received the letters prior to an upcoming jury trial for TORSTVEIT. VICTIM #1 advised that TORSTVEIT ultimately took a plea agreement and the case did not go to trial. VICTIM #1 stated that he/she and his/her spouse were both "freaked out" by the letters. On October 1, 2025, VICTIM #1 was afraid to go to work and stayed inside of his/her residence all day. VICTIM #1's spouse took a different route to work and to their child's daycare due to fear of being followed. VICTIM #1 had a friend who is a state trooper sit in VICTIM #1's driveway all day for protection as the trooper was off work that day. VICTIM #1 described that he/she and his/her spouse were angry and scared because of the letters. VICTIM #1 stated that these letters caused emotional distress due to the anticipation of more letters and a fear of death.

20. On March 10, 2026, I interviewed VICTIM #2. When asked how the letters made him/her feel, VICTIM #2 stated that it "scared the hell out of me." VICTIM #2 stated that he/she have worked in the judicial system for over forty years and nothing like this has ever happened before.

21. On March 10, 2026, I interviewed VICTIM #3. VICTIM #3 initially stated that when he/she opened the parcel containing feces, he/she thought it was, "kind of funny or stupid." VICTIM #3 told his/her spouse and the parcel was upsetting to her.

22. I inspected the letters and parcels and was able to determine that they had been sent through the United States Postal Service.

**END OF SWORN STATEMENT**

## PENALTY SUMMARY

**DEFENDANT NAME:** **JARED ALLEN TORSTVEIT**

**DATE:** May 8, 2026

**INTERPRETER NEEDED:** No

**VICTIM(S):** Yes

**OFFENSE/PENALTIES:**

**Cts: 1, 3** **18 U.S.C. §§ 2261A(2)(A) and 2261(b)**
(Stalking – Fear of Death or SBI)

0-5 Years Imprisonment
Up to $250,000 Fine
Up to 3 Years Supervised Release
$100 Special Assessment

**Cts: 2, 4-5** **18 U.S.C. §§ 2261A(2)(B) and 2261(b)**
(Stalking – Substantial Emotional Distress)

0-5 Years Imprisonment
Up to $250,000 Fine
Up to 3 Years Supervised Release
$100 Special Assessment

**TOTALS:** 0-25 Years Imprisonment
Up to $1,250,000 Fine
Up to 3 Years Supervised Release
$500 Special Assessment

**AGENT:** RJ Fergon, USPIS

**AUSA:** Paige N. Hammer , Assistant United States Attorney

| | |
|---|---|
| **ESTIMATED TIME OF TRIAL:** | 1 to 5 days |
| **WILL THE GOVERNMENT SEEK DETENTION IN THIS CASE:** | Yes |
| **ARE THERE DETAINERS FROM OTHER JURISDICTIONS:** | No |