Lance Johnston WSB #7-5922
Assistant United States Attorney
District of Wyoming
P.O. Box 668
Cheyenne, WY 82003
307-772-2124
lance.johnston@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff,<br>**v.**<br>**JARED ALLEN TORSTVEIT,**<br>Defendant. | **Criminal No. 26-MJ-22-KHR** |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION TO REOPEN DETENTION PROCEEDINGS AND REQUEST FOR PRETRIAL RELEASE**

The Defendant filed his Motion to Reopen Detention Proceedings and Request for Pretrial Release (Doc. 23) on July 23, 2026. In his motion he provides a release plan that includes acceptance at Southwest Counseling Services, which is new information. For the reasons outlined below, the government opposes the Defendant's motion.

## I. Factual and Procedural Background

This case arises from a prolonged and escalating course of conduct directed at three individuals involved in the Defendant's prior state criminal prosecution which is detailed in the Sworn Affidavit in Support of Criminal Complaint (Doc. 1). For clarity and to preserve the privacy of the victims, the Government identifies the victims as follows: Victim 1, a law enforcement officer; Victim 2, a judicial officer; and Victim 3, a county prosecutor. Each victim participated in the Defendant's state DUI case in 2025—Victim 1 investigated and arrested him, Victim 3

prosecuted him, and Victim 2 is the judge that presided over the matter. The Defendant's animus toward these individuals metastasized into a sustained campaign of stalking, threats, and harassment lasting more than a year.

Beginning in August 2025, the Defendant mailed threatening communications to Victim 2's post office box. These letters employed ominous, cryptic language and later escalated to photographs of Victim 2's home accompanied by declarations anticipating his death. During the same period, the Defendant mailed fabricated "news articles" to Victim 1's residence purporting to describe an assassination attempt on Victim 1, followed by a subsequent "article" announcing his death. All of these letters were sent to the victims' personal addresses, plainly demonstrating the Defendant's intent to invade the victims' private lives and provoke fear where they would feel most vulnerable.

In January and February 2026, the Defendant's conduct escalated further. Each victim received a parcel mailed from the Rozet, Wyoming Post Office. Though the return addresses varied, the parcels shared unmistakable characteristics: all were paid in cash, all were shipped through Rozet, and all contained animal excrement. Each victim collected the parcel personally and delivered it to law enforcement. The shipments to Victims 1, 2, and 3 occurred within approximately two weeks of one another, demonstrating intentional coordination and a unified purpose to intimidate and harass all three.

Following receipt of these parcels, federal law enforcement confronted the Defendant. During a voluntary interview in Upton, Wyoming, the Defendant admitted to mailing the letters and all three feces-filled parcels. He stated plainly that he did so because he was angry about losing his commercial driver's license due to the DUI case prosecuted by Victim 3, sentenced by Victim

2, and initiated by Victim 1. Even in his own account, the conduct was retaliatory, targeted, and directed at these individuals because of their official roles in the prior prosecution.

Based on the apparent cooperation of the Defendant during his interview, law enforcement agreed to inform him if or when charges were brought and allow him to turn himself in. After U.S. Postal Inspector Fergon informed him via telephone that an arrest warrant had been issued, his conduct escalated yet again. On June 6, 2026, the Defendant attempted to purchase a firearm at a Gillette sporting goods store. He completed an ATF Form 4473 and falsely denied being under indictment, thereby attempting to circumvent federal law to obtain a weapon. The purchase was denied only because the National Instant Criminal Background Check System (NICS) flagged his pending charges. It reflects not merely defiance of legal restrictions but an effort to equip himself with a firearm after he knew federal intervention was imminent.

The Defendant's danger is not limited to threats and harassment which is now known and not included in the Sworn Affidavit. His conduct after arrest demonstrates an intent to obstruct justice. Jail calls reveal the Defendant attempting to persuade others, including a man investigators believe to be his friend, identified as T.R.K. and his spouse, to remove and conceal an item he repeatedly referred to as a "chair," which he described using characteristics consistent with a computer or electronic storage device. Upon his spouse's confusion in understanding his coded language, the Defendant described the "chair" as having cords coming out of the rear, sitting on the table, and a speaker sitting atop the object. His spouse contradicted the existence of such a chair, prompting the Defendant to clarify that the "chair" was like "a laptop chair" except this is a "C chair." Eventually his spouse was able to decipher the code and she agreed to provide the item to T.R.K., however, when law enforcement contacted her, she provided a computer to them which is pending a search.

These statements are hardly inscrutable. They bear all the hallmarks of coded language intended to conceal evidence of drafting the threatening letters—an inference consistent with the known characteristics of the letters themselves. What is known is that the Defendant, even while in custody, attempted to have evidence removed from his residence.

The Defendant was charged by complaint on May 8, 2026 with multiple counts of stalking in violation of 18 U.S.C. §§ 2261A & 2261. (Doc. 1). If indicted, the government intends to add additional counts for the attempted purchase of a firearm as well as attempting to have evidence concealed or destroyed.

The government is in negotiations with the Defendant, and he has agreed to toll indictment to preserve the opportunity to consider a more advantageous plea agreement. (Doc. 19). Both the prosecution and counsel for the Defendant have consulted with probation and determined that the Defendant's guideline sentencing range, if convicted at trial, is estimated to be level 33, criminal history category II, which is a range of 151-188 months of prison.[1] To be eligible for probation under the guidelines at his criminal history category, he will need to reduce his Total Offense Level down to 10. U.S.S.G. § 5B1.1. While never an absolute certainty, if found guilty, the Defendant will likely be sentenced to several years in prison.

This court previously conducted a detention hearing on June 16, 2026, and ordered continued detention based on the serious risk the Defendant posed to the victims and the community. (Doc. 18).

Counsel for the Defendant filed the motion before this court on July 23, 2026. His counsel has labored to locate an appropriate facility, within the State of Wyoming, to provide him with

[1] Base offense level of 18 (§ 2A6.2(a)), +4 Specific Offense Characteristic (§2A6.2(b)(1)), +6 Official Victim (§ 3A1.2), +3 Multiple victims (§ 3D1.4), and +2 Obstructing (§ 3C1.1). This estimate is intended to be the worst case and does not contemplate acceptance of responsibility or other factors not yet known.

treatment and secure a bed date. The Defendant asserts that he is willing to comply with any reasonable conditions to secure his release.

## II. VICTIM INPUT AND CVRA COMPLIANCE

The government has fully complied with the Crime Victims' Rights Act. Each victim was notified of the Defendant's motion, consulted regarding the proposed release plan, and given an opportunity to express concerns.

All three victims oppose the Defendant's release. They recognize that the Defendant will someday be released, but they unanimously believe release is unsafe at this stage, particularly given his escalation to attempted firearm acquisition. They noted that the proposed treatment facility in Rock Springs is approximately ninety minutes from their homes. In Wyoming—a state with rural geography and areas of sparse law enforcement coverage—that proximity is concerning given the effort he put into causing them concerns for their safety. The Defendant committed every act of harassment from Upton, substantially farther away than Rock Springs. Distance has never restrained him.

The victims expressed concern that a non-secure facility such as Southwest Counseling would not prevent the Defendant from leaving and resuming his harassment or from resuming his efforts to acquire a firearm. Their input weighs heavily in the danger analysis required under § 3142(g).

## III. PROBATION'S ASSESSMENT

United States Probation has reviewed the proposed release plan and opposes the Defendant's release. Probation's position is unequivocal: there are no conditions of release that would reasonably assure victim or community safety. Probation further notes the Defendant's prior

departure from voluntary treatment just before his attempt to purchase a firearm creates a concern that he will not comply with this court's orders outlining conditions of release.

Probation's assessment aligns with the government's own analysis and with the victims' concerns.

## IV. LEGAL STANDARD

Under 18 U.S.C. § 3142(f)(2)(B), "[… t]he hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."

If the court determines it is appropriate to reopen the hearing, the court will then decide "whether there are conditions of release that will reasonably assure the appearance of the person as required" or "the safety of any other person and the community." 18 U.S.C. § 3142(g). In doing so, courts must consider:

> (1) The nature and circumstances of the offense charged, . . . ;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. §§ 3142(g)(1)-(4).

The Federal Rules of Evidence do not apply in pretrial detention proceedings. Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f)(2)(B). Accordingly, both the government and the defense may present evidence by proffer or hearsay.

## V. ARGUMENT

### A. Minimal Basis to Oppose Reopening

The availability of a treatment bed is new information, but it is not material. A non-secure facility that the Defendant may leave at any time does not reduce risk. It does not address the Defendant's willingness to retaliate against public officials, his escalation to attempted firearm acquisition, or his efforts to conceal evidence after arrest. The new information does not have a material bearing on danger or the likelihood of his future appearance, and thus fails to satisfy § 3142(f)(2)(B).

### B. If a Hearing is Granted, the § 3142(g) Factors Strongly Favor Continued Detention

The nature and circumstances of the Defendant's offense demonstrate a sustained course of targeted intimidation against three public officials carried out over eighteen months, including mailed death threats, graphic harassment, and parcels containing biological waste. The Defendant committed these acts from afar, demonstrating that distance poses no obstacle. To place him in even closer proximity to the victims, despite limited transportation options, creates an unmitigated risk to the victims in this case. *See* 18 U.S.C. § 3142(g)(1).

The weight of the evidence is exceedingly strong. The Defendant confessed to mailing threatening communications and parcels and there is surveillance video of his attempted firearms purchase. *See* 18 U.S.C. § 3142(g)(2).

The Defendant's history and characteristics also strongly support detention. He exhibited hostility toward arresting officers; he made unsolicited, angry contact with Victim 3 months after

the DUI conviction; and after learning of federal charges, he immediately attempted to purchase a firearm while lying on a federal form. He also attempted to persuade others to remove and conceal evidence from his home. These actions demonstrate escalating behavior and a willingness to obstruct justice. *See* 18 U.S.C. § 3142(g)(3).

The danger posed by the Defendant is clear and convincing. His conduct was retaliatory, sustained, and directed at individuals performing public duties. He escalated to attempted firearm acquisition. He also attempted to have evidence removed from his residence under coded language while in-custody for this offense. Additionally, the Defendant faces a lengthy prison sentence if convicted which creates a strong incentive to flee. The proposed treatment placement provides no physical security. It does not prevent him from leaving, contacting victims, or resuming harassment.

Under § 3142(g), no condition or combination of conditions can reasonably assure community safety.

## VI. CONCLUSION

For the foregoing reasons, the court should deny the Defendant's request for release. If the court elects to reopen detention proceedings, it should nonetheless maintain the existing order of detention under § 3142(g).

**DATED** this 4th day of August, 2026.

DARIN D. SMITH
United States Attorney

By: */s/ Lance Johnston*
LANCE JOHNSTON
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of August, 2026, the foregoing **Government's Response to Motion to Reopen Detention Proceedings and Request for Pretrial Release** was electronically filed and consequently served on defense counsel.

*/s/ Vickie L. Smith*
UNITED STATES ATTORNEY'S OFFICE